```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION

QUANTUM CATALYTICS, LLC,        §
and TEXAS SYNGAS, INC.,         §
                                §
          Plaintiffs,           §
                                §
v.                              §     CIVIL ACTION NO. H-07-2619
                                §
ZE-GEN, INC., WILLIAM DAVIS,    §
NEW BEDFORD WASTE SERVICES,     §
LLC, AND VANTAGE POINT VENTURE  §
PARTNERS,                       §
                                §
          Defendants.           §
```

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is the motion (with supplement) motion to dismiss (Docket Entry Nos. 14, 26) filed by Defendants Ze-gen, Inc., ("Ze-gen"), William Davis ("Davis"), New Bedford Waste Services, LLC, ("NBWS").  The court has considered the motion, all relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED**.

### I.  Case Background

Plaintiffs filed this patent action against Defendants, claiming that they are infringing nine patents held by Plaintiff Quantum Catalytics, Inc., ("Quantum") and licensed to Plaintiff Texas Syngas, Inc., ("TSI").  Plaintiffs also allege state law

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Docket Entry No. 4.

violations of unfair competition and conspiracy to convert confidential and trade secret information.

Quantum is the owner of the nine patents at issue in this suit, and TSI is "a sub-licensee holder of the rights to enforce" the patents.[2] Together, Plaintiffs are "in the business of utilizing low cost hydrocarbons, such as biomass, waste products, and coal to create environmentally friendly, low cost energy through a complex and highly valuable gasification process."[3] Some aspects of the technology involved in their processes are patented and some are "kept confidential and protected as valuable trade secrets."[4]

Ze-gen, a Delaware corporation with its principal place of business in Massachusetts, focuses on "develop[ing] and deploy[ing] efficient gasification systems that convert waste into clean energy."[5] Ze-gen operates a proof-of-concept facility in New Bedford, Massachusetts, to facilitate research, data collection,

---

[2] Second Amended Original Complaint, Docket Entry No. 23, ¶¶ 11, 13. In their original complaint, Plaintiffs claimed that TSI is the exclusive license holder of the patent rights. See Original Complaint, Docket Entry No. 1, ¶ 11. Despite the obvious alteration in their pleadings, Plaintiffs reassert in their motion briefs, without reference to sworn testimony, that TSI is what they claimed in their first complaint, the exclusive licensee. See Response to Motion to Dismiss, Docket Entry No. 33, p. 11; Surreply in Opposition to the Motion to Dismiss, Docket Entry No. 44, p. 4.

[3] Second Amended Original Complaint, Docket Entry No. 23, ¶ 19.

[4] Id.

[5] Motion to Dismiss, Docket Entry No. 14, Ex. 1 (unnumbered), Declaration of Davis, ¶¶ 4, 5.

and testing.[6]  The facility does not produce products that are distributed in the stream of commerce.[7]

Ze-gen has no offices, distributors, manufacturing facilities, property, or assets in Texas, does not sell products or services in Texas, is not registered to do business in Texas, and does not maintain a registered agent in Texas.[8]  Although Ze-gen does operate a website, it uses the internet venue to advertise "by sharing information and linking to press articles . . . about Ze-gen's products and services," to provide contact information, and to offer a newsletter service.[9]  It does not receive orders for products or services via the internet.[10]  Davis, who is a resident of Massachusetts, is the president and chief executive officer of Ze-gen.[11]

NBWS is a limited liability company with its principal place of business in New Bedford, Massachusetts, that operates a waste transfer facility.[12]  NBWS does not sell products at all and does

---

[6]   Id. at ¶ 6.

[7]   Id. at ¶ 8.

[8]   Id. at ¶ 7.

[9]   Id. at ¶ 9.

[10]   Id. at ¶ 10.

[11]   Id. at ¶¶ 2-3.

[12]   Motion to Dismiss, Docket Entry No. 14, Ex. 2 (unnumbered), Declaration of Michael A. Camara, ¶¶ 4-5.  The declaration of Michael A. Camara ("Camara") states, "NBWS operates a waste transfer facility in New Bedford, Texas." Id. at ¶ 5.  This appears to be an error.  Neither party asserts that the NBWS facility is in Texas, and, although there is a Bedford, Texas, the court

not have officers, employees, offices, distributors, manufacturing facilities, assets, or property in Texas.[13] As with Ze-gen, it is not registered to do business in Texas and does not maintain a registered agent in Texas.[14] The NBWS website is passive; that is, NBWS does not use it to sell products, to enter into contracts, or to conduct business transactions.[15]

In late 2005, Davis twice sought to obtain a license from Quantum to operate under these patents.[16] However, Ze-gen and Quantum were unable to reach an agreement.[17]

In mid 2007, Sanjay Wagle ("Wagle"), who is an officer/director of Defendant Vantage Point Venture Partners ("Vantage"), contacted via telephone Michael Sydow ("Sydow") and Michael Collins ("Collins"), who are officers of TSI.[18] At the time, Sydow and Collins were in Houston.[19] According to Plaintiffs' allegations, Wagle feigned interest in investing in TSI and sought specific and confidential trade secret information from TSI, but failed to disclose that Vantage possessed an ownership stake in Ze-

---

cannot locate a New Bedford, Texas.

[13]   Id. at ¶¶ 5, 6.

[14]   Id. at ¶ 5.

[15]   Id. at ¶ 7.

[16]   Second Amended Original Complaint, Docket Entry No. 23, ¶ 15.

[17]   Id.

[18]   Id. at ¶ 16.

[19]   Id.

4

gen.[20] Davis lacked knowledge of Wagle's phone call and testified that Wagle did not provide Ze-gen with any information resulting from that call.[21]

At some undisclosed time, Plaintiffs hired MPR Associates, Inc., ("MPR"), which is an engineering and technology consulting company with offices in Houston, to provide an independent, confidential analysis of Plaintiffs' technology and trade secrets.[22] Scott Fraser ("Fraser") was an employee of MPR who participated in the analysis.[23] Plaintiffs allege that, after learning of Fraser's work with Plaintiffs, Ze-gen recruited Fraser to its employment in order to gain access to Plaintiffs' trade secrets.[24] Plaintiffs claim that Ze-gen representatives met with Fraser and negotiated and executed an employment agreement in Texas.[25] Plaintiffs believe that Ze-gen was able to gain access to protected information that it used in the design and operation of infringing facilities and processes.[26]

---

[20] See id.

[21] Supplement to Motion to Dismiss, Docket Entry No. 26, Ex. 1 (unnumbered), Supplemental Declaration of Davis, ¶ 2.

[22] Second Amended Original Complaint, Docket Entry No. 23, ¶ 20.

[23] Id. at ¶ 21.

[24] See id. at ¶ 22.

[25] See id.

[26] See id.

Defendants' version of how Fraser became an employee of Ze-gen differs significantly from that of Plaintiffs. Davis asseverated that a third-party recruiter identified Fraser as a candidate for employment with Ze-gen and that no one traveled to Texas to meet with Fraser or to negotiate or execute an employment contract.[27] In January 2008, after the completion and initial operation of the New Bedford pilot facility, Ze-gen hired Fraser, who then moved from Houston to Massachusetts.[28]

Plaintiffs filed this action on August 10, 2007, initially asserting claims of patent infringement and unfair competition.[29] Plaintiffs later added a claim of conspiracy to convert confidential information and trade secrets.[30] Plaintiffs allege that Davis and Ze-gen "use methods and design and construct products which directly and plainly infringe" the patents asserted in this action.[31] They assert, on information and belief, that Ze-gen and Davis are operating the facility in a joint venture with NBWS.[32] They further allege that Vantage contributed to the

---

[27] Supplement to Motion to Dismiss, Docket Entry No. 26, Ex. 1 (unnumbered), Supplemental Declaration of Davis, ¶ 3.

[28] See id.; Motion to Dismiss, Docket Entry No. 14, Ex. 1 (unnumbered), ¶ 7.

[29] Plaintiffs' Original Complaint, Docket Entry No. 1, ¶¶ 14-21.

[30] See Second Amended Original Complaint, Docket Entry No. 23, ¶ 35.

[31] Id. at ¶ 15.

[32] See id. at ¶ 18.

infringement by providing Ze-gen with monetary support and by attempting to procure trade secrets from Plaintiffs.[33]

TSI filed suit against Fraser and Ze-gen in state court.[34] The state court issued an agreed temporary restraining order against Fraser and Ze-gen preventing them from discussing with anyone any information that either has related to TSI's intellectual property, proprietary or confidential information, trade secrets, and other acquired facts.[35]

In January, Ze-gen, Davis, and NBWS filed the currently pending motion to dismiss on the bases that the court lacks personal jurisdiction over any of them, that venue is improper, and that TSI lacks standing to bring suit. The court now considers that motion, beginning and ending with the issue of personal jurisdiction.

## II.  Analysis

The Federal Rules of Civil Procedure authorize a court to dismiss an action against a defendant when the court lacks personal jurisdiction over that defendant. See Fed. R. Civ. P. 12(b)(2). On a motion to dismiss, the burden is on the plaintiff to present sufficient facts to establish a prima facie case in support of

---

[33] See id. at ¶ 17.

[34] See id. at ¶ 23.

[35] See id.; Plaintiffs' Response to Motion to Dismiss, Docket Entry No. 33, Ex. A, Agreed Order Granting Plaintiff's Application for Temporary Restraining Order, p. 2.

jurisdiction.  See Revell v. Lidov, 317 F.3d 467, 469 (5th Cir. 2002).

The district court may receive any combination of recognized methods of discovery, including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis.  Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., No. 06-30886, 2008 U.S. App. LEXIS 2668, at *10-11 (5th Cir. Feb. 6, 2008, revised Feb. 27, 2008).  The court resolves all conflicts in the evidence in favor of the plaintiff and accepts as true all of the plaintiff's uncontroverted allegations.  Revell, 317 F.3d at 469; see also Walk Haydel & Assocs., Inc., 2008 U.S. App. LEXIS 2668, at *11 (quoting Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977), as stating that "a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss").

A federal court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers jurisdiction and if jurisdiction is consistent with due process under the United States Constitution.  Revell, 317 F.3d at 469.  In Texas, the long-arm statute permits personal jurisdiction to full extent allowed by the Due Process Clause.  Revell, 317 F.3d at 469-70.

> The Due Process Clause . . . permits the exercise of personal jurisdiction over a nonresident defendant when

8

> (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."

Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999)(quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).

Minimum contacts are established with a state by a defendant whose conduct and connection with that state are significant enough that the defendant reasonably should anticipate being haled into court in that state. Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 379 (5th Cir. 2002). The defendant must "purposely avail[] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). Continuous and systematic contacts are grounds for the exercise of general jurisdiction over a nonresident defendant for any cause of action regardless of whether the claim arose from specific activity within the forum. Cent. Freight Lines Inc. v. APA Transp. Corp., 322 F.3d 376, 381 (5th Cir. 2003). Specific jurisdiction may exist if the asserted cause of action arises out of or is related to the defendant's contact with the forum. Walk Haydel & Assocs., Inc., 2008 U.S. App. LEXIS 2668, at *16; Cent. Freight Lines Inc., 322 F.3d at 381.

Upon a showing of minimum contacts, the court considers the second prong of the due process analysis, whether personal

jurisdiction comports with traditional notions of fair play and substantial justice.  See Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 421 (5th Cir. 1993).  Key to the court's analysis are the following factors:  "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies."  Id.

Defendants challenge only the minimum-contacts portion of the analysis.  They offer Davis's sworn testimony to show that he is a resident of Massachusetts, that Ze-gen has no offices, distributors, manufacturing facilities, property, or assets in Texas, that it does not sell products or services in Texas, that it is not registered to do business in Texas, and that it does not maintain a registered agent in Texas.  Also by declaration, NBWS provides evidence that it does not sell products at all, does not have officers, employees, offices, distributors, manufacturing facilities, assets, or property in Texas, is not registered to do business in Texas, and does not maintain a registered agent in Texas.

Plaintiffs argue that several assertions in their complaint are sufficient to meet their prima facie burden for personal jurisdiction over all three defendants.  They assert that Vantage acted as an agent for Ze-gen in attempting to obtain trade secrets

10

from Plaintiffs in Texas, that Ze-gen, through the actions of Davis, negotiated and executed a contract with Fraser in order to obtain Plaintiffs' trade secrets, and that Ze-gen and Fraser consented to a temporary restraining order prohibiting them from discussing with anyone Plaintiffs' trade secrets or other confidential information.[36] Plaintiffs offer no affidavit testimony and, other than the submission of a copy of the temporary restraining order and extension, submit no evidence in support of personal jurisdiction. Essentially, they rely solely on the allegations in their complaint.

The court must take all of Plaintiffs' uncontroverted allegations as true and resolve evidentiary disputes in Plaintiffs' favor. See Walk Haydel & Assocs., Inc., 2008 U.S. App. LEXIS 2668, at *11; Revell, 317 F.3d at 469. In this case, however, Defendants submitted evidence that contradicts many of Plaintiffs' allegations. Upon submission of evidence challenging personal jurisdiction, Plaintiffs' prima facie obligation is to submit countervailing affidavits or other documentation. See Walk Haydel & Assocs., Inc., 2008 U.S. App. LEXIS 2668, at *11; Revell, 317 F.3d at 469. Because Plaintiffs have failed to submit any evidence regarding Defendants' contacts with Texas (other than a copy of the

---

[36] See Plaintiffs' Response to Motion to Dismiss, Docket Entry No. 33, p. 8.

11

agreed temporary restraining order), the court considers Defendants' sworn statements to be undisputed.

Considering Davis's Texas contacts first, the court finds that the only ones alleged--two attempts to negotiate licenses with Plaintiffs and the employment recruitment of Fraser--fall far short of establishing the type of continuous and systematic contacts required for the exercise of general jurisdiction. Cf. Cent. Freight Lines Inc., 322 F.3d at 381 (stating the standard for general jurisdiction).

Davis's Texas contacts also fail to establish specific jurisdiction. With regard to the attempts to negotiate licenses (a factual assertion that Defendants do not dispute), those efforts simply cannot be said to have given rise to Plaintiffs' alleged patent, unfair-competition or trade-secret injuries. Cf. Walk Haydel & Assocs., Inc., 2008 U.S. App. LEXIS 2668, at *16 (stating the standard for specific jurisdiction); Cent. Freight Lines Inc., 322 F.3d at 381 (same). That is, the attempted negotiation of licenses hardly constitutes evidence of patent infringement, unfair competition, or conspiracy to convert trade secrets.

As for the recruitment of Fraser for employment, Davis denies that he traveled to Texas to meet with Fraser or to sign any agreement. He does not deny that he contacted Fraser while Fraser was in Texas. Regardless, such activity is not related to the allegations of wrongdoing. Recruiting an employee, even one who

12

may possess another's confidential information, is far too attenuated from the elements of the causes of action in this lawsuit to raise an inference of personal jurisdiction, much less to establish a prima facie case. Additionally, Plaintiffs' allegations that Davis recruited Fraser in order to convert Plaintiffs' trade secrets are nothing more than speculation. The court cannot exert jurisdiction over Davis for the claims asserted by Plaintiffs.

Plaintiffs' assertions against Ze-gen fare no better. In total, the contacts alleged against Ze-gen include Davis's contacts (identified above), Wagle's telephone contact with TSI in which he allegedly feigned interest in investing in TSI, and Ze-gen's consent to a state court temporary restraining order. Even assuming that all of these contacts are imputable to Ze-gen, they do not amount to grounds for general jurisdiction. They are neither continuous nor systematic.

Separately or collectively, they do not support specific jurisdiction either. For the reasons explained in the section addressing Davis's contacts, attempting to obtain licenses and recruiting a Texas resident for employment do not relate to the causes of action brought against Ze-gen. Additionally, Wagle's conduct cannot be attributed to Ze-gen. In fact, Davis testified that any contact Wagle made with TSI representatives was without Ze-gen's knowledge, much less at its request or instigation.

13

According to the undisputed account by Davis, Wagle never provided Ze-gen with any information about Plaintiffs.  Lastly, the temporary restraining order is not a contact with Texas because it was subject to Ze-gen's special appearance in the state lawsuit.[37] This court cannot exercise personal jurisdiction over Ze-gen.

Plaintiffs point to no conduct by NBWS that even remotely suggests purposeful availment of the benefits and protections of Texas.  Instead, Plaintiffs attempt to establish personal jurisdiction by bootstrapping NBWS onto the alleged contacts of Davis and Ze-gen.  The attempt must fail for at least three reasons:  1) NBWS has no identifiable contacts with Texas; and 2) nothing connects NBWS to Davis and Ze-gen so as to justify imputing their contacts to NBWS; 3) the identified contacts Davis and Ze-gen had with Texas are insufficient, as a matter of law, to establish even a prima facie case of personal jurisdiction.  The court lacks personal jurisdiction over NBWS.

### III.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED**.

---

[37] Plaintiffs claim that, despite the explicit reservation of rights related to its special appearance in the temporary restraining order, "Ze-gen had already consented to jurisdiction in Texas." Plaintiffs' Response to Motion to Dismiss, Docket Entry No. 33, p. 8, n.6.  The court finds no indication in this record that Ze-gen waived personal jurisdiction in the state suit.  Even if it had, that fact would not relate to the causes of action in this case such that personal jurisdiction would be proper here.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 31st day of March, 2008.

Nancy K. Johnson
United States Magistrate Judge