IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUANTUM CATALYTICS, LLC, *et al.*, | § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION H-07-2619 |
| ZE-GEN, INC., *et al.*, | § § § | |
| *Defendants.* | § | |

### ORDER ADOPTING MAGISTRATE JUDGE'S
### MEMORANDUM AND RECOMMENDATION

Pending before the court are Plaintiffs' objections[1] (Dkt. 60) and supplemental objections[2] (Dkt. 82) to the Magistrate Judge's Memorandum and Recommendation (Dkt. 50). Having reviewed the Magistrate Judge's Memorandum and Recommendation, the objections, the supplemental objections, the new evidence, and Defendants' response, the court is of the opinion that Plaintiffs' objections should be **OVERRULED**, but not without some discussion.

A district court that refers a case to a magistrate judge must review de novo any portions of the magistrate judge's proposed findings and recommendations on dispositive matters to which the parties have filed specific, written objections. See Fed. R. Civ. P. 72(b). The district court may accept, reject, or modify, in whole or in part, those portions of the proposed findings and

---

[1] Plaintiffs' objections are captioned, "Opposition to the Magistrate's Recommendation of March 31, 2008" ("Plaintiffs' Objections").

[2] Plaintiffs' supplemental objections are captioned, "Sealed Plaintiffs' Supplement in Opposition to Defendants' Motion to Dismiss" ("Plaintiffs' Supplemental Objections") and were also docketed as Docket Entry No. 83.

recommendations. See id. In this case, the court also must consider new jurisdictional evidence submitted in connection with Plaintiffs' objections.

In March of this year, the magistrate judge recommended that the court grant the motion to dismiss for lack of personal jurisdiction filed by Defendants Ze-gen, William Davis ("Davis"), and New Bedford Waste Services, LLC ("NBWS"). At that time, Plaintiffs alleged that Defendant Davis attempted, on two occasions, to negotiate licenses with Plaintiffs and recruited a resident of Texas for employment. They also alleged that Sanjay Wagle, an officer/director of Defendant Vantage Point Venture Partners ("Vantage"), contacted via telephone two officers of Plaintiff Texas Syngas, Inc., ("TSI"), in order to gather information about Plaintiff TSI under false pretenses. The only other jurisdictional fact pled by Plaintiffs against Defendants Davis and Ze-gen was that Defendant Ze-gen had consented to a state court temporary restraining order. The evidence revealed no identifiable contact between Defendant NBWS and Texas.

Defendants submitted declarations affirming that Defendant Davis was a resident of Massachusetts, that Ze-gen had no offices, distributors, manufacturing facilities, property, or assets in Texas, that it did not sell products or services in Texas, that it was not registered to do business in Texas, and that it did not maintain a registered agent in Texas. Also by declaration, a managing member of Defendant NBWS asseverated that it did not sell products at all, did not have officers, employees, offices, distributors, manufacturing facilities, assets, or property in Texas, was not registered to do business in Texas, and did not maintain a registered agent in Texas.

Relying on Fifth Circuit law,[3] the magistrate judge found that Defendants' contacts with the forum were neither continuous nor systematic and, as such, did not support the exercise of general jurisdiction. As for specific jurisdiction, the court noted that attempting to obtain licenses and recruiting a Texas resident for employment did not relate to Plaintiffs' causes of action (patent, unfair competition, and conspiracy to convert confidential and trade secret information). The evidence did not support a finding that Wagle contacted Plaintiff TSI representatives with Defendant Ze-gen's knowledge or provided Defendant Ze-gen with any information gained from the telephone call. Finally, the consensual restraining order was subject to Defendant Ze-gen's special appearance in the state lawsuit and was not, therefore, a contact with Texas.

Plaintiffs objected to the recommendation, arguing that the above contacts were sufficient to establish personal jurisdiction and that additional evidence discovered post-recommendation in the related state court action provided more than enough evidence for a prima facie showing of jurisdiction over all Defendants.[4] According to Plaintiffs, the newly discovered evidence shows that:

---

[3] Citing Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998), and 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998), Defendants contend that "Federal Circuit law controls whether a district court has personal jurisdiction over a patent case." Defendants' Response to Plaintiffs' Objections and Supplemental Objections ("Defendants' Response"), Docket Entry No. 88, p. 3. In 3D Sys., Inc., the Federal Circuit extended its reach beyond patent claims to state law claims that went "hand-in-hand with [the] patent infringement claims." 3D Sys., Inc., 160 F.3d at 1377. In 2003, the Federal Circuit decided the issue of personal jurisdiction employing Federal Circuit law for the patent claims and Eighth Circuit law for the nonpatent claims. Silent Drive, Inc. v. Strong Indus., 326 F.3d 1194, 1201 (Fed. Cir. 2003).

Defendants assert that the law of the two circuits is "largely the same," and Plaintiffs do not suggest that the outcome would differ if Federal Circuit law were applied. See Defendants' Response, Docket Entry No. 88, p. 3; Plaintiffs' Objections, Docket Entry No. 60; Plaintiffs' Supplemental Objections, Docket Entry No. 82. Upon review of Federal Circuit law on personal jurisdiction, the court finds that the legal principles, if not the cases cited, on which the magistrate judge decided Defendants' motion are consistent with Federal Circuit law. Compare Memorandum and Recommendation, Docket Entry No. 50, pp. 7-10, with Silent Drive, Inc., 326 F.3d at 1200-01.

[4] Plaintiffs' Objections, Docket Entry No. 60, pp. 5-6.

> [Defendants] Ze-gen and Davis hired their attorney in Texas eight months prior to the suit being filed, targeted potential employees in Texas, hired Texas companies to print articles for them to assist their efforts in targeting Texas, have numerous business relationships in Texas, and have sought to finance Ze-gen through Texas based companies.[5]

Plaintiffs also reiterated a request for jurisdictional discovery.

Defendants Ze-gen and Davis disagree with Plaintiff about the impact of the new evidence submitted. In part, they argue that the e-mail communications only show that other companies reached out to Defendant Ze-gen and that the home of the attorney selected to prosecute patents for them is not a basis for jurisdiction.

Although Plaintiffs attached hundreds of pages of documents to their objections, very few pages even address contacts Defendants initiated with Texas. The evidence supports that, over the course of more than two years, Defendants Ze-gen and Davis collectively: 1) hired an attorney whose office was in Dallas, Texas; 2) considered and interviewed several Texas residents for employment; 3) corresponded with Texas companies that sought Ze-gen's business; 4) submitted an article for publication to a Texas communications company; and 5) were contacted by a Houston employee of Sowood Capital Management LP ("Sowood") to deny Ze-gen's investment proposal.

E-mail communications between Ze-gen and Element Markets LLC of Sugar Land, Texas,[6] and Henry Hefty of Richmond, Texas,[7] do not provide enough information for the court to determine

---

[5] Id. at pp. 5-6.

[6] The e-mail messages submitted were sent by Element Markets LLC regarding the draft of a nondisclosure agreement. Id. at Ex. A-2, Ze-Gen 000960-61, e-mails from Charlie Nunu to Defendant Davis dated Oct. 30, 2006.

[7] The only e-mail message submitted is one from Henry Hefty to Defendant Davis in which Henry Hefty states, "When you are ready, we would like to produce quantities of autoclaved cellulose for testing with your molten metal gasification system." Id. at Ex. A-2, Ze-Gen 000959, e-mail from Henry Hefty to Defendant Davis dated Jan. 11, 2007.

who initiated the contact or the nature and extent of the relationship.  The e-mail messages between Defendant Ze-gen and Defendant Vantage are insufficient to establish, as Plaintiffs contend, that Vantage exercised control over Ze-gen and, thus, that Vantage's Texas contacts are attributable to Ze-gen.  The nearly fifty pages of purchasing documents that Plaintiffs submitted do not relate to Defendant Ze-gen at all, except that, according to Plaintiffs, they were in Defendant Ze-gen's possession.

Overall, Plaintiffs failed to connect, beyond speculation and hyperbole, any of the evidence submitted with the elements of the causes of action in this suit.  Collectively, the evidence of Defendants Ze-gen and Davis reaching out to Texas is sparse and isolated and does not come near the type of continuous and systematic contacts necessary to warrant the exercise of personal jurisdiction.  Nevertheless, the magistrate judge allowed Plaintiffs to engage in jurisdictional discovery, after which they supplemented their objections.

In their supplemental objections, Plaintiffs provide additional background information, but focus on Defendants Ze-gen and Davis's "systematic practice of supplying potential investors and financing companies, including some Texas residents, with both executive summaries and business plans."[8]  In particular, Plaintiffs highlight the contacts between Defendant Ze-gen and Sowood and Defendant Ze-gen and Element Markets LLC.

As to the first, Plaintiffs contend that Defendant Davis contacted Sowood in May 2005 and that Davis's contact was a Sowood employee who was located in Houston.  In the effort to secure financing, Plaintiffs continue, Defendant Davis sent technical data to Sowood, possibly to the Houston office.  Defendants respond by pointing to Davis's deposition testimony, which indicates

---

[8]   Plaintiffs' Supplemental Objections, Docket Entry No. 83, p. 5.

that a broker referred Defendants Ze-gen and Davis to Sowood and Defendant Davis first met with a Sowood representative in Boston before being assigned to a project manager who lived in Houston.[9] Defendant Davis testified that all of the meetings held between Defendant Ze-gen and Sowood took place outside of Texas.[10]

As to the second, Plaintiffs argue that Defendant Ze-gen entered into a nondisclosure agreement ("NDA") with Element Markets LLC concerning the development of Defendant Ze-gen's carbon trading business. The NDA explicitly identified Texas law as governing. Defendant Davis explained the relationship with Element Markets LLC:

> [Element Markets LLC is] based in Sugar Land, Texas, or at least there's an office down there. And we had a conversation with them[,] which I think related to carbon trading, and they were interested in talking about how they could learn about what we were doing and possibly support us as a carbon trading partner and wanted to get an overview on Ze-gen.
> And[,] for whatever reason, that discussion led to the agreement that we would do it under [an] NDA. And we had the discussion. I think maybe I heard from Charlie once again. We've never had any business relationship with them.[11]

The elaboration on these failed business contacts and the new evidence in no way affects the finding that the court lacks personal jurisdiction. The claims in this case do not arise from these business endeavors. The court does not agree with Plaintiffs that efforts to procure financing for Defendant Ze-gen is tantamount to the selling of allegedly infringing material. Moreover, the relationships with both outside companies were brief and unsuccessful, and the Sowood contact, which was initiated by Defendants Ze-gen and Davis, only incidentally involved a Texas resident.

---

[9] See Defendants' Response, Docket Entry No. 88, Ex. Tab Ze-gen, Deposition of Defendant Davis. pp. 102-04, 117-18.

[10] Id. at pp. 117-18.

[11] Id. at pp. 121-22.

Nothing in evidence supports a conclusion that Defendant NBWS had any, much less continuous and systematic, contacts with Texas.

For these reasons, Plaintiffs' objections are **OVERRULED**.

It is, therefore, **ORDERED** that the Memorandum and Recommendation (Dkt. 50) is hereby **ADOPTED** by this court. Defendants Ze-gen, Inc., William Davis, and New Bedford Waste Services, LLC's motion to dismiss (Dkt. 14) is **GRANTED** and plaintiffs' claims against them are **DISMISSED** for lack of personal jurisdiction. Any other motions pending from these defendants are **DENIED** as moot.

Signed at Houston, Texas on August 11, 2008.

_____
Gray H. Miller
United States District Judge