```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF TEXAS
                   HOUSTON DIVISION

QUANTUM CATALYTICS, LLC,        §
and TEXAS SYNGAS, INC.,         §
                                §
        Plaintiffs,             §
                                §
v.                              §   CIVIL ACTION NO. H-07-2619
                                §
VANTAGEPOINT VENTURE PARTNERS,  §
                                §
        Defendant.              §
```

**ORDER**

Pending before the court[1] is Motion to Transfer Venue or, in the Alternative, to Stay the Action ("Motion to Transfer") (Docket Entry No. 107) filed by Defendant VantagePoint Ventures, Inc. ("VantagePoint"). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** VantagePoint's motion.

**I.  Case Background**

Plaintiffs filed this action on August 10, 2007, initially asserting claims of patent infringement and unfair competition against Ze-Gen, Inc., William Davis ("Davis"), Burns & Roe, Inc., and New Bedford Waste Services, LLC ("NBWS").[2] Several amendments followed.[3] In March 2008, Plaintiffs filed their third amended

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 4.

[2] See Plaintiffs' Original Complaint, Docket Entry No. 1.

[3] See First Amended Complaint, Docket Entry No. 6; Second Amended Complaint, Docket Entry No. 23; Third Amended Complaint, Docket Entry No. 48.

complaint, which decreased the number of patent claims asserted, reflected the dismissal of Burns and Roe as a defendant, and clarified allegations against VantagePoint.[4]

A few days after Plaintiffs filed their third amendment, the court recommended dismissal of Ze-Gen, Inc., Davis, and NBWS for lack of personal jurisdiction.[5] The court allowed jurisdictional discovery and additional briefing before submitting the Memorandum and Recommendation to the district court, which adopted it on August 11, 2008.[6]

On August 22, 2008, Plaintiffs filed a parallel action in the United States District Court for the District of Massachusetts.[7] Plaintiffs named Ze-Gen, Inc., Davis, NBWS, Flagship Ventures LLC ("Flagship"), Irv Morrow ("Morrow"), David Judson ("Judson"), and VantagePoint as defendants and brought the following actions:  1) direct infringement of the patents-in-suit against Ze-Gen, Davis, and NBWS; 2) inducement of infringement of the patents-in-suit against all seven named defendants; 3) contributory infringement against VantagePoint, Flagship, Morrow, Judson, and NBWS; 4)

---

[4] See Plaintiffs' Third Amended Complaint, Docket Entry No. 48; Plaintiffs' Motion for Leave to File Third Amended Complaint, Docket Entry No. 49, pp. 2-3.  Plaintiffs added VantagePoint in their Second Amended Complaint. See Docket Entry No. 23.

[5] See Memorandum and Recommendation dated Mar. 31, 2008, Docket Entry No. 50.

[6] See Minute Entry Order, Docket Entry No. 66; Order dated Aug. 11, 2008, Docket Entry No. 90.

[7] See Quantum Catalytics, LLC v. Ze-Gen, Inc., Civ. Action No. 08-11456 (D. Mass. Aug. 22, 2008), Docket Entry No. 1, Plaintiffs' Complaint.

misappropriation of trade secrets against all seven named defendants; 5) unfair competition under state common law against all seven named defendants; 6) unfair competition under Massachusetts statutory law against all seven defendants.[8]

On November 21, 2008, this court recommended that VantagePoint's motion for summary judgment on Plaintiffs' nonpatent claims and its motion to dismiss for lack of personal jurisdiction be denied.[9] Five days later, Plaintiffs moved the Massachusetts court for leave to file an amended complaint in which Plaintiffs omitted claims against Judson and VantagePoint, corrected the name of the Flagship defendant, and narrowed the infringement claims to those based on only eight, rather than fourteen, patents.[10] The Massachusetts court has not ruled on Plaintiffs' motion for leave to amend, but has scheduled a hearing on December 18, 2008, on the issue.[11] At this time, then, all of the original claims filed there, including claims of inducement of infringement, contributory infringement, misappropriation of trade secrets, and unfair competition (under common and statutory law) currently remain pending in Massachusetts.

---

[8] See id. at pp. 14-19.

[9] See Memorandum and Recommendation dated Nov. 21, 2008, Docket Entry No. 105.

[10] See Quantum Catalytics, LLC v. Ze-Gen, Inc., Civ. Action No. 08-11456 (D. Mass. Aug. 22, 2008), Docket Entry No. 53, Motion for Leave to File Amended Complaint.

[11] See id. at Electronic Notice of Hearing on Motion dated Dec. 2, 2008.

The district court here adopted the undersigned's recommendation on December 15, 2008. Thus, still pending before this court are Plaintiffs' claims against VantagePoint for unfair competition and trade-secret misappropriation, conspiracy to misappropriate trade secrets, and inducement of infringement of the patents at issue.

As explained in Plaintiffs' response brief to the motion to transfer,[12] Plaintiffs allege that VantagePoint contributed to infringement allegedly perpetrated by Ze-Gen by providing financing for the construction and operation of the accused facility and by attempting to solicit trade secrets from Plaintiff Texas Syngas, Inc. ("TSI").[13] With regard to the former, Plaintiffs assert that Scott Brown, who is a partner in VantagePoint, serves on Ze-Gen's board of directors and "plays an active role in the ongoing management of Ze-Gen's infringing activity."[14] As to the trade-secret accusation, the offending event, according to Plaintiffs, was a 2007 contact that Sanjay Wagle ("Wagle"), an officer and employee of VantagePoint, initiated with TSI.[15] Wagle allegedly

---

[12] Other than some additional allegations regarding Pacific Corporate Group (which the court omits here), Plaintiffs' summary of allegations presented in their response brief is entirely consistent with those in their third amended complaint. Compare Plaintiffs' Opposition to VantagePoint's Motion to Transfer, Docket Entry No. 110, pp. 4-5 with Plaintiffs' Third Amended Complaint, Docket Entry No. 48, pp. 6-8.

[13] Plaintiffs' Opposition to VantagePoint's Motion to Transfer, Docket Entry No. 110, pp. 4-5.

[14] Id. at p. 4.

[15] See id. at p. 5.

"feigned an interest in investing TSI" in an effort to acquire trade secret information from TSI for Ze-Gen's use.[16]

VantagePoint seeks to have this case transferred to Massachusetts. Plaintiffs oppose the transfer, explaining that they "have sought to structure their claims for maximum efficiency: the bulk of the patent claims will be litigated in Massachusetts, and the trade secret claims will be litigated in this Court, where VantagePoint's misappropriation occurred and where TSI is located."[17]

## II. Analysis

A district court may transfer any civil action to any other district where the case might have been brought, if transfer serves "the convenience of parties and witnesses . . . [and is] in the interest of justice." 28 U.S.C. § 1404(a); see also Van Dusen v. Barrack, 376 U.S. 612, 616 (1964); In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004). The party seeking the transfer must demonstrate that the balance of convenience and justice factors favors a change of venue. See Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966). The decision whether to transfer venue rests

---

[16] Id.

[17] Id. at pp. 6-7. Although they expressed an interest in litigating all of the patent claims in Massachusetts, Plaintiffs did not move to dismiss the pending patent claims here. In fact, they footnote in their response brief, "[I]f this Court were inclined to transfer any portion of this case, only the patent infringement claims should be transferred." Id. at p. 11, n.3. As an aside, VantagePoint represented to this court that Plaintiffs admitted, in the Massachusetts case, that six of the fourteen patents have expired. See VantagePoint's Motion to Transfer, Docket Entry No. 107, p. 3. Plaintiffs have made no such admission before this court.

5

within the discretion of the district court.  Casarez v. Burlington N./Santa Fe Co., 193 F.3d 334, 339 (5th Cir. 1999).

In balancing the convenience and justice factors, the court takes into consideration various private and public interest factors in light of the specific facts of the case.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); In re Volkswagen AG, 371 F.3d at 203.  The private concerns include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  In re Volkswagen AG, 371 F.3d at 203.  Public interest factors that may be relevant to the analysis include: (1) administrative difficulties related to court congestion; (2) the local interest in deciding the controversy; (3) the familiarity of the forum with the applicable law; and 4) the avoidance of unnecessary conflict of laws problems.  In re Volkswagen AG, 371 F.3d at 203.

The parties do not dispute that Plaintiffs could have brought their case against VantagePoint in Massachusetts.  In fact, Plaintiffs did sue VantagePoint there on the identical claims asserted here.  After this court ruled that it can exercise personal jurisdiction over VantagePoint, Plaintiffs changed their minds again about where the case against VantagePoint should be

litigated. As is evident in their response brief, Plaintiffs assume that the Massachusetts court will grant leave to amend their complaint, but that has not occurred yet. As the cases now stand, Plaintiffs are pursuing identical causes of action against VantagePoint in two distant fora.

The court need not individually address each of the convenience and justice factors identified by the Fifth Circuit in <u>In re Volkswagen AG</u> to recognize that the claims against VantagePoint belong in Massachusetts with the remainder of this action. Plaintiffs' patent claims against VantagePoint are wholly derivative of those against Ze-Gen. The trade secret claims, although not derivative, are inseparable from identical claims asserted against Ze-Gen and others in Massachusetts. Moreover, according to Plaintiffs themselves, the alleged theft of Plaintiffs' trade secrets is one of the ways in which VantagePoint "contributed, actively, knowingly, and substantially, to Ze-Gen's infringement."[18]

Plaintiffs' plea to keep the trade-secrets portion of the VantagePoint lawsuit here in the name of efficiency collapses under the weight of its absurdity. Pursuant to no logical analysis can it be said that utilizing the resources of two courts to resolve

---

[18] Plaintiffs' Opposition to VantagePoint's Motion to Transfer, Docket Entry No. 110, pp. 4, 5.

the same issues involving the same parties is efficient.[19]  The factual accounts for both categories of claims involve the same actors, many of whom are not located in Texas, and the same events.  Importantly, the patent claims here clearly require discovery about Ze-Gen's operations and information about a process that is outside VantagePoint's apparent area of expertise.  Additionally, in order to prove their theory of misappropriation, Plaintiffs have to connect VantagePoint to Ze-Gen and, more than likely, will require evidence from the principals of Ze-Gen to do so.

Even more concerning than the duplication of effort is the possibility of inconsistent rulings.  Patent construction is not an easy matter and is often subject to multiple reasonable interpretations.  Differing definitions of even a simple word could cause negative ripples across the industry, inhibiting inventions or spawning more lawsuits.  More mundanely, the patent and trade-secret claims are closely enough aligned factually that opposite findings between the two courts could call into question the legal validity of both courts' decisions.

The court is not moved by Plaintiffs' request that the court not disturb Plaintiffs' choice of forum, primarily because Plaintiffs have chosen both fora.  Although their arguments

---

[19] This is true even if VantagePoint is no longer a named party in the Massachusetts action because the same conduct by VantagePoint forms the basis for both the patent and the misappropriation claims.  In either case, information about Ze-Gen, its actions, and its connection with VantagePoint is critical.

concerning where TSI is located[20] and where the harm occurred carry some appeal, they are not reason enough to retain the claims against VantagePoint when all claims could be handled with greater convenience, judicial economy, and efficiency in one case in Massachusetts. Finally, given the shifting sand on which each side has built its arguments and the mutual strategic jockeying, this court is not inclined to employ judicial estoppel against VantagePoint, as urged by Plaintiffs.[21]

### III. Conclusion

Based on the foregoing, the court **GRANTS** VantagePoint's motion to transfer.

**SIGNED** in Houston, Texas, this 16th day of December, 2008.

Nancy K. Johnson
United States Magistrate Judge

---

[20] In its reply, VantagePoint avers that a recent newspaper article reports that TSI is changing its name and moving to Massachusetts. See VantagePoint's Reply in support of its Motion to Transfer or, in the Alternative, to Stay the Action, Docket Entry No. 107, p. 2.

[21] The court reaches this decision without making any factual determination as to whether VantagePoint's position here is contrary to the position it has taken before the Massachusetts court.